IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID A. COLF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:15-cv-03498 |
| | § | |
| | § | |
| JABIL CIRCUIT, INC., | § | |
| | § | |
| Defendant | § | |
| | § | |

**RESPONSE IN OPPOSITION TO JABIL CIRCUIT, INC.'
PARTIAL MOTION TO DISMISS**

Comes now Plaintiff David A. Colf ("Colf") and responds in opposition to the Motion to Dismiss for Failure to State a Claim[1] (Doc. 10) filed by Defendant Jabil Circuit, Inc. ("Jabil") on April 1, 2016 as follows:

### INTRODUCTION

Colf respectfully submits that this Court should follow the explicit holding of the United States Supreme Court in *Smith v. City of Jackson*[2] and the language of the ADEA when read in light of its purpose, defer to the reasonable position of the EEOC that the ADEA protects job applicants from disparate-impact age discrimination, and deny the motion to dismiss.

### STATEMENT OF FACTS

1.  Colf applied for employment with Jabil as Director, Global Legal Affairs in December 2013. The position was open, and Jabil was seeking a qualified candidate for the

---

[1] Jabil's was a partial motion to dismiss – in two ways. First, it sought to dismiss Colf's disparate impact claims, not his disparate treatment claims. Second, it sought to dismiss Colf's disparate impact claims under the ADEA, but not his disparate impact claims under Chapter 21 of the Texas Labor Code.
[2] 544 U.S. 228 (2005).

RESPONSE IN OPPOSITION TO MOTION TO DISMISS    PAGE 1

position. Colf met and exceeded all the qualifications and experience requirements for the position. The information Colf provided or that Jabil could obtain (before it insisted that Colf disclose his date of birth (DOB)) did not disclose Colf's age. Colf's resume did not indicate his age. Colf had not gone directly from undergraduate school to law school. Colf's first job after law school, indicating a 1987 graduation date, made Colf's resume look like the typical 50 year old and Colf did not appear to be 60 years old in his social media pictures. (Plaintiff's Original Complaint – Doc. 1, ¶¶ 7-8).

2. On January 8, 2014, a Senior Recruiter for Jabil named Steven Morris sent an email to Colf. On January 13, 2014, Colf and Morris spoke by telephone about Colf's interest in the job. On January 17, 2014, Colf spoke by telephone with the hiring manager for Jabil, Ms. Sam Brem, VP, Global Legal Affairs. On February 6, 2014, Morris sent at least 2 emails to Colf, stating that Jabil was "very interested" in interviewing Colf. *Id.* ¶9.

3. Colf had highly favorable telephone interviews and feedback from Jabil before Jabil learned his age. Before Jabil learned Colf's age, and as of February 6, 2014, Brem was "very interested" in bringing Colf into Jabil's corporate offices for a full day of interviews. *Id.* ¶10.

4. Jabil, however, had a practice of obtaining the date of birth ("DOB") of job applicants before interviewing them. After Jabil indicated it was very interested in interviewing Colf, Jabil insisted, through a series of at least three emails to Colf on February 7, 2014, that Colf provide it with his DOB. Jabil could have obtained Colf's presence for an in person interview without first learning his DOB. Instead, Jabil insisted to Colf that it needed his DOB information to purchase airfare for Colf's travel. In fact, Jabil did not need Colf's DOB for him to travel to the in-person interviews. Colf offered to buy his own ticket and get reimbursed, but Jabil

insisted that Colf provide his DOB. Because Jabil demanded Colf's DOB information, he provided this information to Morris, revealing that he was 60 years old. *Id.* ¶¶ 1 & 11.

5. Jabil's practice of requiring job applicants to provide their dates of birth to Jabil in advance of interviews, whether to facilitate Jabil-purchased air travel or not, constitutes an employment practice with an unlawful disparate impact upon older job applicants. *Id.* ¶12.

6. After Colf disclosed his DOB to Morris, Jabil made it clear to Colf in many tangible ways that it had no interest in hiring him. Immediately after Colf provided his date of birth, indicating that Colf was 60 years old, Jabil lost interest in interviewing and hiring him. From that moment forward Morris never again initiated communication with Colf, though Morris had been the contact-initiator prior to learning the DOB information. After that, Colf had to initiate all communications. In fact upon learning Colf's age, Morris (the recruiter responsible for filling the position and who had previously personally initiated all communication) handed off all communications with Colf to Beth Fix, a coordinator. From that moment forward Jabil made it obvious to Colf that Jabil was no longer interested in interviewing him. Only because of Colf's persistence did Jabil agree to an interview, clearly because failure to interview Colf immediately after he revealed that he was 60 years old would make age discrimination even more obvious. But the planned interviews were rescheduled three times before the final interview date was set. *Id.* ¶13.

7. On February 24, 2014, the day of the interview Morris, the Jabil recruiter responsible for filling the position, did not bother to meet with Colf. Jabil made it obvious that it had already written Colf off. Jabil sent Beth Fix in his place. *Id.* ¶14.

8. Colf's first interview was a lunch interview with Don Myers, not a member of the legal department, who was, as in the phone interview before, very favorable. During the

interview Myers stated that Colf did not need to sell himself to Myers, that Colf had his vote. John Dargan, also not a member of the legal department, later said the same thing. *Id.* ¶15.

9. Colf's interviews with members of the legal department were markedly different. In these interviews all the questions were pro forma, not at all designed to explore Colf as a candidate. The interviewers made it clear that were simply going through the motions. Most striking was the fact that Ms. Sam Brem, Jabil's hiring manager, did not even go through the motions. When Ms. Brem came to the meeting she brought John Darcy, an intellectual property lawyer with her. Then she promptly allowed Mr. Darcy to conduct the interview. Hiring manager Brem repeatedly left the room. Brem attended probably less than 50% of the interview. Brem made it clear that she felt she did not need to waste her time interviewing Colf and that she had already made her mind up, based on Colf's age. Another indicator of Brem's bias against Colf's age was that during the brief time Colf did get to speak to her, Colf stated that a position such as this required someone with significant experience. Brim's response was "but not too much experience." Brim was using code words for age bias: "too much experience" is code for "too old." *Id.* ¶16.

10. Jabil's practice of requiring applicants for legal positions to have experience, but not too much experience constitutes an employment practice with an unlawful disparate impact upon older job applicants. *Id.* ¶17.

## ARGUMENT AND AUTHORITIES

I. **The United States Supreme Court Recognition of ADEA Disparate Impact Claims is *Not* Limited to Existing Employees**

The Supreme Court, as Jabil concedes, recognized disparate impact claims under the Age Discrimination in Employment Act of 1967 (ADEA) in 2005 in *Smith v. City of Jackson, Miss.,* 544 U.S. 228 (2005). Jabil, however, contends that *Smith v. City of Jackson, Miss.* "is limited on

its facts" and "does not authorize job applicants like Colf to bring disparate-impact failure-to-hire claims under the ADEA." Doc. 10, p. 2.

Colf disagrees with this narrow reading of *Smith v. City of Jackson*, *Miss.* The starting place should be the holding stated in Part I of *Smith v. City of Jackson*, *Miss.*, in which Justice Scalia concurred (for a 5-3 decision). **This is the holding:** "We . . . now hold that the ADEA does authorize recovery in "disparate-impact" cases comparable to *Griggs*." *Smith v. City of Jackson*, *Miss.,* 544 U.S. at 232. The holding refers to *Griggs v. Duke Power Co.,* 401 U.S. 424 (1971), of which the majority in *Smith v. City of Jackson*, *Miss.* states: "[o]ur unanimous interpretation of § 713(a)(2) of Title VII in *Griggs* is therefore [because Congress uses the same language in two statues having similar purposes so "it is appropriate to presume that Congress intended that text to have the same meaning in both statutes"] a precedent of compelling importance." *Id.* at 233-34.

So – what was the holding of *Griggs*? Without question, *Griggs* held that Title VII protected job applicants along with incumbent employees from disparate impact discrimination. The Court ruled in *Griggs* that "an employer is prohibited by the Civil Rights Act of 1964, Title VII, from requiring a high school education or passing a standardized general intelligence test **as a condition of employment in or transfer to jobs**" when such requirements have a disparate impact based on race. *Grigg*, 401 U.S. at 425-26, 432-33 (emphasis added). Discriminatory intent is not required for liability under this provision of Title VII, as explained in EEOC guidelines the Court found were entitled to "great deference." *Id.* at 433-34.

The fact that the *Smith v. City of Jackson*, *Miss.* plaintiffs were incumbent employees does not change the Court's broad and explicit holding. Nor do its footnotes 6 and 7,[3] which

---

[3] Jabil cites the O'Connor concurring opinion for what it "flatly states" (Doc. 10, p. 2) to incorrectly suggest that it limits the holding of *Smith v. City of Jackson*, *Miss.* to incumbent employees. It is

when read with the holding in *Smith v. City of Jackson*, *Miss.* make it plain that the High Court was not saving for another day the question of whether the ADEA is inferior to Title VII for some "individuals," namely persons who were not yet employees, who were mere "job applicants," or, for that matter, individuals who were no longer "employees," merely "former employees." The Court in *Smith* expressly announced the same disparate-impact coverage applies under the ADEA as under Title VII as announced in *Griggs*.

> II. The ADEA *Does* Authorize Disparate-Impact Claims by Applicants As Well As By Existing (And Former) Employees
>
> A. The Language of 4(a)(2) Supports Disparate-Impact Protection for "Any Individual," Including Job Applicants and Former Employees

Justices Stephens, Souter, Ginsberg, and Bryer, joined by Justice Scalia on this part of the opinion, stated that Griggs . . . interpreted the **identical text** at issue here, which strongly suggests that a disparate-impact theory should be cognizable under the ADEA." *Smith v. City of Jackson*, *Miss.* at 236 (emphasis added). In *Griggs*, the Court was interpreting Title VII's § 703(a)(2), that provides:

> It shall be an unlawful employment practice for an employer –
> . . .
> (2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive **any individual** of employment opportunities   or otherwise adversely affect his status as an employee because of **such individual's** race, color, religion or national origin.

42 U.S.C. § 2000e-2(a)(2)(emphasis added).

The ADEA language in § 4(a)(2) referred to as "identical" by five justices in Smith, does say "employee" rather than "employee or applicants" in the first clause, but the Court points out

---

important to note that (a) Justice O'Connor would have held "disparate impact claims are not cognizable under the ADEA," (*Smith v. City of Jackson*, *Miss.* at 248), and the majority in *Smith v. City of Jackson*, *Miss.* rejected Justice O'Connor's reading of § 4(a)(2) of the ADEA.  *Id.* at 236, fns. 6 & 7.

that this "text focuses on the effects of the action on the employee rather than on the motivation for the action of the employer." *Smith v. City of Jackson, Miss., supra* at 236 (emphasis in original).  Footnote 6 explains that  "[t]he focus of [paragraph 4(a)(1)] is on the employer's actions with respect to the targeted individual," while "Paragraph (a)(2), however, makes it unlawful for an employer 'to limit . . . his *employees* in any way which would deprive or tend to deprive *an individual* of employment opportunities or otherwise adversely affect his status as an employee, because of *such individual's* age.'"  *Id.* at 236, fn. 6 (emphasis in original).  This is the language of Paragraph 4(a)(2) of the ADEA:

> It shall be an unlawful employment practice for an employer –
> . . .
> (2)  to limit, segregate, or classify his employees in any way which would deprive or tend to deprive **any individual** of employment opportunities or otherwise adversely affect his status as an employee because of **such individual's** age . . . .

29 U.S.C.  § 623(a)(2)(emphasis added).

Jabil's argument incorrectly ignores, treating as meaningless, the terms "any individual" and "such individual" in Paragraph 4(a)(2).  The omission of the term "or applicants" from the first clause of the sentence does not somehow convert and narrow the term "any individual" into "any individual so long as that individual is an incumbent employee."  Jabil's argument is technical in nature, and would lend itself to further narrowing of the broad intended purpose of Paragraph 4(a)(2).  For example, an applicant is a would-be future employee.  So if applicants are not covered, employers might next make another technical argument -- that Paragraph 4(a)(2) applies just to promotion claims of incumbent employees – not to termination claims of former employees – who, after all, the employer might argue – are no longer "employees," only former

employees. This technical, legalistic approach cannot be permitted in light of the "any individual" provision and in light of the remedial and humanitarian purposes of the ADEA.[4]

The remedial purpose of the ADEA, certainly encompasses applicants with this language:

(a) The Congress hereby finds and declares that –

   (1)   in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, **and especially to regain employment when displaced from jobs**;

   (2)   **the setting of arbitrary age limits** regardless of potential job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons;

   (3)   **the incidence of unemployment, especially long-term unemployment** with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave;

   (4)   the existence in industries affecting commence, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce.

(b) It is therefore **the purpose of this chapter to promote employment of older persons** based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621 (emphasis added).

This language could well have been written specifically for job applicant David Colf, who found himself unemployed. Congress's language addresses Colf's efforts to obtain employment with Jabil, where he found himself unemployable because of his age. The courts

---

[4] The ADEA "is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination." *Dartt v. Shell Oil Co.,* 539 f.2d 1256, 1260 (10th Cir. 1976), aff'd 434 U.S. 99 (1977); *see also Hamilton v. Rodgers,* 791 F.2d 439, 442 ("Title VII should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination.")(quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied,* 406 U.S. 957 (1972).

have stressed that the ADEA is a remedial statute that should be construed to effectuate its purposes.[5] Jabil seeks a non-remedial, technical and incorrect, approach to interpreting the ADEA.

### B. Most Courts Have Ruled That The ADEA *Does* Authorize Disparate-Impact Claims by Applicants As Well As By Existing (And Former) Employees

Jabil's motion is incorrect or misleading in stating that "the Seventh, Eighth and Tenth Circuits have each stated that § 4(a)(2) is limited to employees" (Doc. 10, p.3) and that the Eleventh Circuit's recent decision (now vacated and pending rehearing)[6] is a "minority view." *Id*. at 4. In fact, the Seventh and Tenth Circuit's are unclear, the Eighth Circuit permits disparate impact ADEA claims under § 4(a)(1), and most circuits appear to use the broad (applicants also) view supported by the explicit holding of the Supreme Court in *Smith v. City of Jackson, Miss.*

**(1)   Courts Ruling Applicants Are Covered**

•        A District Court in the **District of Columbia** Circuit permits applicants to pursue disparate impact ADEA claims.

Without addressing the "employees only" debate Jabil raises in its motion to dismiss, the United States District Court for the District of Columbia addressed the merits of the claim of a fifty-eight year old applicant who asserted illegal disparate impact discrimination under the ADEA. *Ficken v. Clinton,* 841 F.Supp.2d 85, 90-91 (D.D.C. 2012). While Judge Urbina granted summary judgment against the plaintiff due to lack of evidence, the court carefully analyzed the evidence for disparate impact proof, and did not suggest that the plaintiff must lose because he was an individual protected under Paragraph 4(a)(2) of the statute, but not yet an "employee."

---

[5] See footnote 4, *supra*.
[6] *Villarreal v. R.J. Reynolds Tobacco Co*., 806 F.3d 1288 (11th Cir. 2015), opinion vacated and rehearing en banc granted, _ F.3d _, 2016 WL 635800 (11th Cir. 2016).

- A District Court in the **Second Circuit** permits applicants to pursue disparate impact ADEA claims.

Likewise, the United States District Court for Connecticut addressed the merits of the claim of a job applicant who asserted illegal disparate impact discrimination under the ADEA without addressing the "employees only" debate Jabil raises in its motion to dismiss. *Magnello v. TJX Companies, Inc.*, 556 F. Supp.2d 114, 122-23 (D. Conn. 2008). While Judge Eginton granted summary judgment against the plaintiff due to lack of evidence on both her disparate treatment and disparate impact claims, the court plainly analyzed the evidence for disparate impact proof, and did not suggest that the plaintiff must lose because she was an individual protected under Paragraph 4(a)(2) of the statute, but not yet an "employee."

- The **Sixth Circuit** permits applicants topPursue disparate impact ADEA claims.

Before the Supreme Court's ruling in *Smith*, and without making any suggestion that the plaintiff must lose because he was a mere "applicant," and not an employee, the Sixth Circuit, while affirming summary judgment against the plaintiff, addressed the merits of the claim of a job applicant who asserted illegal disparate impact discrimination under the ADEA. *Wooden v. Board of Educ, of Jefferson Cnty, Ky.*, 931 F.2d 376 (6th Cir. 1991).

- The **Eighth Circuit** permits applicants to pursue disparate impact ADEA claims.

Jabil's discussion of *Smith v. City of Des Moines*, 99 F.3d 1466 (8th Cir. 1996), a pre-*Smith v. City of Jackson, Ms.*, case (Doc. 10, p. 3), is artful, but does not support its motion to dismiss. Jabil cites *Smith v. City of Des Moines* for the proposition that § 4(a)(2) is limited to employees. Doc. 10, p. 3. Jabil fails to acknowledge, however, that (a) *Smith v. City of Jackson, Ms*. is broader (expressly providing *Griggs*-comparable coverage under the ADEA) and (b)

*Smith v. City of Des Moines* expressly states that in the Eighth Circuit applicants "may base a disparate impact claim on § 623(a)(1)." *Smith v. City of Des Moines,* 99 F.3d at 1470, n.2.

- The **Ninth Circuit** permits applicants to pursue disparate impact ADEA claims.

Several Ninth Circuit cases both before and after *Smith v. City of Jackson, Miss*. say applicants are protected from disparate impact discrimination under the ADEA. *See, e.g. E.E.O.C. v Borden's Inc.,* 724 F.2d 1390 (9th Cir. 1984); *Cotton v. City of Alameda*, 812 F.2d 1245 (9th Cir. 1987); *U.S.E.E.O.C. v. Newport Mesa Unified School Dist*., 893 F. Supp. 927 (C.D. Ca. 1995).

**(2) One District Court Ruling That Applicants Are Not Covered**

- A District Court in the **Seventh Circuit** has ruled that applicants may not pursue disparate impact ADEA claims.

*Kleber v. CareFusion Corp.*, _ F.Supp.3d _, 2015 WL 7423778 *2 (N.D. Ill.) accepted the employer's argument that the ADEA does not provide for disparate impact claims by job applicants. The court did so based on the Seventh Circuit ruling in *E.E.O.C. v. Francis W. Parker School*, 41 F.3D 1073, 1077 (7th Cir. 1994) (*id*.) without any analysis of the impact of *Smith v. City of Jackson, Miss.*, that reversed *Francis W. Parker School*. The district court failed to discuss what meaning the words "any individual" in § 4(a)(2) might have or how "any individual" somehow really means "any individual except a job applicant." The district court did not discuss the EEOC position that the ADEA protects job applicants from disparate-impact discrimination, let alone find the EEOC's position to be unreasonable and therefore decide against deferral to it.

**(3) One Court That Is Presently Debating Whether Applicants Are Covered**

- The **Eleventh Circuit** has Not Decided Whether Applicants to Pursue Disparate Impact ADEA Claims.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS    PAGE 11

*Villarreal v. R.J. Reynolds Tobacco Co.*, 806 F.3d 1288 (11th Cir. 2015), opinion vacated and rehearing en banc granted, __ F.3d __, 2016 WL 635800 (11th Cir. 2016) shows that at present two Eleventh Circuit judges have found coverage for disparate impact claims for applicants under the ADEA and one has not. Significantly, something that Jabil's motion fails to note, the majority opinion in the now-vacated *Villarreal* decision expressly agreed that Congress adopted the ADEA to address discriminatory hiring (806 F.3d at 1298), (b) noted the court defers to the EEOC's interpretation and application of the ADEA unless the EEOC's views are unreasonable (*id.* at 1299), and (c) found the EEOC's view – that the ADEA protects applicants from disparate-impact discrimination – to be reasonable and deferred to that view. *Id.* at 1300.

**(4)  Courts That Are Unclear About Whether Applicants Are Covered**

•   The **Seventh Circuit** has not held that applicants cannot pursue disparate impact ADEA claims.

In a pre- *Smith v. City of Jackson, Miss.* ruling, the Seventh Circuit, in *Francis W. Parker School*, 41 F.3d 10731077 (7th Cir. 1994) pointed to the omission of the word "applicants" in subsection (2) of the ADEA as "noteworthy" (41 F.3d 1073, 1078), but **did not** hold that the ADEA does not authorize disparate-impact failure-to-hire claim by applicants for employment. The holding in *Francis W. Parker School* was merely that there was insufficient proof of disparate impact, not that an action does not lie as to applicants. The majority opinion does not have "perfect clarity," but the conclusion that it found room for applicants, but insufficient proof, becomes evident in Part III of the dissent. *Francis W. Parker School*, 41 F.3d at 1078, 1080.

•   The **Tenth Circuit** has not held that applicants cannot pursue disparate impact ADEA claims. The law in the Tenth Circuit is unclear.

The Tenth Circuit, in *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1007 (10th Cir. 1996) had a broader holding – one that the Supreme Court has rejected[7] – that disparate impact claims are not cognizable under the ADEA. *Ellis*, thus, does not stand for, and Jabil should not cite it for the proposition that in the Tenth Circuit § 4(a)(2) is limited to employees as opposed to all individuals, including applicants, current employees, and terminated (former) employees.

        C.        **Other U.S. Supreme Court Authority Supports and Interpretation of the ADEA That Protects Job Applicants (and Former Employees) From Disparate-Impact Age Discrimination**

- As discussed above, *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), a Title VII case, squarely permits disparate impact claims by applicants, not merely by incumbent employees. The Supreme Court itself expressly holds that the ADEA authorizes "recovery in disparate-impact cases comparable to *Griggs*. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 232 (2005).

- *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, _ U.S. _, 135 S. Ct. 2507 (2015), where the Court extended disparate-impact coverage to the Fair Housing Act (FHA) supports a broad (any individual – and this applicants included) interpretation of § 4(a) of the ADEA. The Court in *Inclusive Communities Project* does not back away from, but rather reinforces, the ruling that the ADEA disparate-impact coverage is as broad as that found in Title VII in *Griggs*, explaining:

> Together, *Griggs* holds and the plurality in *Smith* instructs that antidiscrimination laws must be construed to encompass disparate-impact claims when their text refers to the consequences of actions and not just to the mindset of actors, and where that interpretation is consistent with statutory purpose. These cases also

---

[7] *Smith v. City of Jackson*, 544 U.S. 228 (2005); *see Woods v. Boeing Co.*, 355 Fed. Appx. 2006, 214 (fn. 4) (10th Cir. 2009)(recognizing *Smith* overruled *Ellis*).

> teach that disparate-impact liability must be limited so employers and other regulated entities are able to make the practical business choices and profit-related decisions that sustain a vibrant and dynamic free-enterprise system. And before rejecting a business justification—or, in the case of a governmental entity, an analogous public interest—a court must determine that a plaintiff has shown that there is "an available alternative ... practice that has less disparate impact and serves the [entity's] legitimate needs." *Ricci, supra,* at 578, 129 S. Ct. 2658. The cases interpreting Title VII and the ADEA provide essential background and instruction in the case now before the Court.

135 S. Ct. at 2518. The reference to limiting disparate impact is not, of course, a reference to narrowing the protected individuals to exclude applicants – it is a reference to the proof requirement "that there is 'an available alternative . . . practice that has less disparate impact and serves the [entity's] legitimate needs.'" *Inclusive Communities Project* at 2518, *citing Ricci v. DeStefano*, 577 U.S. 577, 578 (2011) and the reasonable factors other than age (RFOA) defense found in the ADEA, 29 U.S.C. § 623 (f)(1).

- *Meacham V. Knolls Atomic Power Laboratory*, 554 U.S. 84 (2008), despite Jabil's assertion (Doc. 10, p. 2), does not support a no-applicant ("only protects employees") coverage ruling. The Court in footnote 13 of Meacham merely states that factual causation under Paragraph 4(a)(2) is "typically shown by looking to data revealing the impact of a given practice on actual employees." *Meacham,* 554 U.S. at 96, n. 13. This is far from language (let alone a holding) that applicants are not covered or that the impact on actual applicants cannot be considered.

### D. The Court Should Defer to the Reasonable and Consistent Interpretation of the ADEA by the EEOC

The EEOC reasonably rejects the distinction between employees and applicants as a reason for eviscerating the term "any individual," interpreting the intent of he ADEA and finding that identical language vis-a-vis Title VII and the ADEA is not required. The now-vacated *Villarreal* decision succinctly explains the EEOC's interpretation that includes applicants:

> The EEOC's current ADEA disparate impact regulation, issued under its statutory rulemaking authority, 29 U.S.C. § 628, does not distinguish between prospective and existing employees. Instead, it states that, "[a]ny employment practice that adversely affects individuals within the protected age group on the basis of older age is discriminatory unless the practice is justified by a 'reasonable factor other than age.' " 29 C.F.R. § 1625.7(c). The regulation extends disparate impact liability to all "individuals within the protected age group." The EEOC argues that the regulation therefore established the agency's view that § 4(a)(2) protects any individual an employer discriminates against, regardless of whether that individual is an employee or job applicant. *Chevron* requires us to defer to this regulation's reasonable interpretation of the ADEA's "standards for a disparate-impact claim." *Smith,* 544 U.S. at 240, 125 S. Ct. at 1544 (plurality opinion). *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S. Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

*Villarreal, supra,* 806 F.3d at 1299.

Then the *Villarreal* decision, in language we urge this Court to adopt, reasons the EEOC's position is reasonable and that deference to the EEOC interpretation is required:

> Although *Smith* addressed a slightly different question than we have here, our study of it causes us to reject RJ Reynolds's argument "that the RFOA clause operates independently of the remainder of the ADEA." *Id.* at 245, 125 S. Ct. at 1548. Although 29 CFR § 1625.7 is primarily analyzing "reasonable factor other than age" not "any individual," we "can conceive no basis" to ignore the regulation's broad and unambiguous interpretation of this latter term "simply because the two simultaneously adopted interpretations appear in the same paragraph." *Id.* at 247, 125 S. Ct. at 1549. *Smith* establishes that 29 CFR § 1625.7 "set[s] forth the standards for a disparate-impact claim." *Id.* at 240, 125 S. Ct. at 1544 (plurality opinion). We owe deference to these standards to the extent they are reasonable, and they are.

*Villarreal, supra,* 806 F.3d at 1300.

## CONCLUSION

For the reasons set forth above, Plaintiff David Colf respectfully asks this Court to deny Jabil's motion to dismiss filed April 1, 2016.

DATED: May 2, 2016                    Respectfully submitted,

                                            Gillespie Sanford, L.L.P.
                                            4925 Greenville Ave., Suite 200
                                            Dallas, Texas  75206
                                            Tel.:   (214) 800-5111
                                            Fax:   (214) 838-0001

                                            By  /s/  *Hal K. Gillespie*_____
                                            Hal K. Gillespie
                                            *Attorney-in-Charge*
                                            Texas Bar No. 07925500
                                            hkg@gillespiesanford.com


                                            ATTORNEYS FOR PLAINTIFF
                                            DAVID A. COLF